IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| TEVITATONGA SINAMONI VAOKEHEKEHE CADIENTE and VAOKEHEKEHE MOUHUNGAFA MATAELE,<br><br>        Plaintiffs,<br><br>    vs.<br><br>CITY AND COUNTY OF HONOLULU, *et al.*,<br><br>        Defendants. | Civil No. 24-00022 MWJS-WRP<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT CITY AND COUNTY OF HONOLULU'S MOTION TO DISMISS |

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT CITY AND COUNTY OF HONOLULU'S MOTION TO DISMISS**

In this civil rights suit, Plaintiffs Tevitatonga Sinamoni Vaokehekehe Cadiente and Vaokehekehe Mouhungafa Mataele allege that police officers, while engaged in an island-wide manhunt, wrongfully arrested Plaintiffs and assaulted Cadiente.  Defendant City and County of Honolulu ("the City") now moves to dismiss the complaint against it, arguing that Plaintiffs have failed to state a claim for municipal liability under § 1983 or respondeat superior liability at state law. This Court agrees that the complaint does not plead a claim of municipal liability, but it concludes that Plaintiffs have adequately pled a respondeat superior claim. The motion to dismiss is therefore GRANTED IN PART and DENIED IN PART.

## BACKGROUND

### A.      The Complaint's Factual Allegations

In considering a motion to dismiss, the Court must assume that a complaint's well-pleaded factual allegations are true and must construe them in the light most favorable to the non-moving party, here, the Plaintiffs.  *See Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 995-96 (9th Cir. 2014).

In this case, the complaint alleges the following.  On the morning of January 1, 2024, the Honolulu Police Department responded to a reported shooting in the Halawa area.  ECF No. 20, at PageID.226 (¶ 16).  The suspect, Sidney Tafokitau, fled the scene by car.  *Id.*  A few hours later, police officers spotted Tafokitau driving near a park, and they followed him in an unmarked vehicle.  *Id.* at PageID.227 (¶ 18).  But Tafokitau noticed the officers.  *Id.*  He opened fire at them, and an hours-long, island-wide manhunt ensued.  *See id.* at PageID.227-29 (¶¶ 18-27).  During the course of this manhunt, Tafokitau fired gunshots at pursuing officers on at least three more occasions.  *Id.* (¶¶ 20, 23, 27).

Meanwhile, Cadiente and his father, Mataele, were at home with their family.  *Id.* at PageID.228 (¶ 24).  Cadiente was following reports of the car chase, and he recognized Tafokitau from their shared church and Tongan communities.  *Id.* at PageID.228-29 (¶¶ 24, 25).

2

In the late afternoon, sirens blared in Cadiente's neighborhood.  *Id.* at

PageID.228 (¶ 24).  As cars sped past their home, Cadiente and Mataele stepped

outside.  *Id.* at PageID.228-29 (¶ 25).  They saw police vehicles parking just a few

hundred yards away and, to get a closer look, began walking towards them.  *Id.* at

PageID.229 (¶ 26).  Unbeknownst to Cadiente and Mataele, Tafokitau had crashed

his car up the street, and the police vehicles were surrounding him.  *Id.* (¶ 27).

Although Cadiente and Mataele could not see Tafokitau, they heard

gunshots.  *Id.* (¶ 28).  Hoping to persuade Tafokitau to stop shooting and surrender,

Cadiente began jogging down the sidewalk, with Mataele following closely

behind.  *Id.* at PageID.229-30 (¶ 28).  But before they reached the crash site, a car

pulled in front of them, cutting off their path.  *Id.* at PageID.230 (¶ 29).  Officers in

civilian attire exited with their firearms brandished, shouting aggressively and

indecipherably.  *Id.*  With the officers' guns pointed at Cadiente, he and Mataele

raised their hands, and Cadiente retreated towards his father.  *Id.* at PageID.230-31

(¶¶ 30-31).  A second vehicle parked nearby, and SWAT members in tactical gear

leapt out.  *Id.* at PageID.230 (¶ 30).  Moments later, a third vehicle—a large black

police van—veered off the road, jumped the curb, and slammed Cadiente into a

chain link fence.  *Id.* at PageID.231 (¶ 31).  He slid under the police van and onto

the pavement.  *Id.*

3

Officers dragged Cadiente out from under the van.  *Id.* (¶ 33).  With their hands and the blunt ends of their weapons, the officers repeatedly struck Cadiente's head.  *Id.*  Unresistant, Cadiente faded in and out of consciousness.  *Id.* Mataele pleaded with the officers, "Stop, that's my son!  We're not involved in this!"  *Id.* at PageID.232 (¶ 35).  But the officers—up to a dozen of them, according to one witness—continued their assault for several minutes.  *Id.* at PageID.231-32 (¶¶ 33, 35).  At least one of these officers taunted Cadiente while beating him, exclaiming, "Oh, you like to shoot at cops, huh?"  *Id.* at PageID.232 (¶ 37).

At the officers' direction, Mataele laid on the ground.  *Id.* (¶ 36).  Officers piled on his back, handcuffed him, and pinned his head to the sidewalk.  *Id.* Mataele did not meaningfully resist.  *Id.* at PageID.234 (¶ 41).  But for about seven minutes, officers pinned him down, with his head turned away from his son.  *Id.* When the officers eventually allowed Mataele to stand, they kept him handcuffed and separated from Cadiente, who remained on the ground, surrounded by officers. *Id.* (¶¶ 41, 42).

Nearly fifteen minutes after the van crashed into Cadiente, an ambulance arrived.  *Id.* (¶ 42).  Cadiente, still handcuffed, was driven to the hospital.  *Id.* Mataele was held by police for over an hour, and other family members were kept for questioning.  *Id.* at PageID.234-35 (¶¶ 42, 44, 45).  While in transit, Cadiente

4

heard a radio update on the search for Tafokitau:  there had been a mistaken identity.  *Id.* at PageID.234 (¶ 42).

Cadiente sustained serious injuries that day, including a facial fracture, a hemorrhage in one eye, a concussion, and a knee injury.  *Id.* at PageID.237 (¶ 53). He continues to struggle with cognition, memory loss, impaired vision, and walking, and he is currently receiving treatment for a torn ligament, brain damage, and ocular damage.  *Id.* at PageID.237-38 (¶ 54).  The City has neither acknowledged the officers' error nor apologized for the incident.  *Id.* at PageID.235 (¶ 46).

### B.    This Motion to Dismiss

Just weeks after the incident, on January 16, 2024, Cadiente and Mataele filed this lawsuit.  ECF No. 1.  They named as Defendants the City and County of Honolulu, along with Doe officers and Doe individuals.[1]  *Id.* at PageID.1.  An amended complaint followed on January 23, 2024.  ECF No. 7.

On February 16, 2024, the City moved to dismiss the claims against it.  ECF No. 12.  In their opposition brief, Plaintiffs voluntarily dismissed certain claims against all defendants and the punitive damages claim against the City.  ECF No.

---

[1]     When "the identity of alleged defendants will not be known prior to the filing of a complaint," plaintiffs may use a "John Doe" placeholder so that they have "an opportunity through discovery to identify the unknown defendants." *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980).

15, at PageID.143.  Accordingly, all that remains against the City are claims for municipal liability under 42 U.S.C. § 1983 and respondeat superior liability under state law.  *See id.*

At the Court's direction, Plaintiffs filed a Second Amended Complaint ("the complaint," for convenience) on March 14, 2024, removing the newly withdrawn claims.  ECF No. 20.  In the interest of judicial economy, the Court considers the City's Motion to Dismiss as addressing Plaintiffs' Second Amended Complaint. ECF No. 19.

A hearing was held on April 17, 2024.  *See* ECF No. 24.

## DISCUSSION

### A.    Motion to Dismiss Standard

Under Rule 12(b)(6), a court must dismiss a complaint when it fails "to state a claim upon which relief can be granted."  Fed. R. Civ. Pro. 12(b)(6).  To survive a 12(b)(6) motion to dismiss, a complaint cannot merely allege "labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Rather, a complaint must allege "enough facts to state a claim to relief that is plausible on its face."  *Id.* at 570.  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  While a court must accept

6

all factual allegations as true and draw reasonable inference in favor of the non-moving party, it must disregard conclusory allegations. *Eclectic Props. E.*, 751 F.3d at 995, 998.

### B. Although the Complaint Fails to State a § 1983 Municipal Liability Claim, It States a State Law Respondeat Superior Claim Against the City

Plaintiffs press two claims against the City: municipal liability under *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978), and respondent superior liability under state law. The City argues that Plaintiffs' allegations fail to state a claim under either theory. While the Court agrees that the Plaintiffs have failed to plead a *Monell* claim, it concludes that Plaintiffs have adequately alleged facts to support a state law respondeat superior claim.

### 1. Municipal Liability Under § 1983

A municipality "may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell*, 436 U.S. at 694. Instead, under § 1983, local governments may only be sued for "their *own* illegal acts." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986). In other words, the municipality must "maintain[] a policy or custom that causes the deprivation of a plaintiff's federally protected rights." *Hyun Ju Park v. City & County of Honolulu*, 952 F.3d 1136, 1141 (9th Cir. 2020) (citing *Monell*, 436 U.S. at 694).

Plaintiffs here advance three theories of municipal liability:  first, that the Honolulu Police Department has a custom and practice of assaulting arrestees; second, that it has failed to adequately train its officers; and third, that policymaking officials ratified the officers' unlawful conduct.  The complaint, however, lacks allegations to state a claim.

Before considering whether liability can be attached to the City, the Court must make a threshold inquiry to determine "whether the plaintiff has been deprived of a [federal] right." *Benavidez v. County of San Diego*, 993 F.3d 1134, 1145 (9th Cir. 2021) (quoting *Baker v. McCollan*, 443 U.S. 137, 140 (1979)). Accepting the complaint's factual allegations as true, Cadiente, at least, has suffered such a deprivation.

Among other things, the Fourth Amendment affords citizens the right to be free from excessive force when being arrested. *See Graham v. Connor*, 490 U.S. 386, 395 (1989).  The complaint sufficiently alleges that Cadiente was deprived of that right.  As alleged, a vehicle slammed Cadiente into a fence, and officers dragged him out and pinned him down on the sidewalk.  ECF No. 20, at PageID.231-32 (¶¶ 31, 33, 35).  Even if the use of a vehicle in this manner were reasonable under the circumstances because the officers reasonably mistook Cadiente for Tafokitau—which the Court need not resolve at this stage—the

allegations, taken as true, establish that officers engaged in unreasonable conduct once Cadiente had been incapacitated.

In particular, the complaint alleges that after he had been slammed by the vehicle, Cadiente was nonresistant and semiconscious, *id.* (¶¶ 33, 35), meaning that he could no longer have reasonably been perceived as posing any active threat. Yet up to a dozen officers bludgeoned Cadiente's head with their hands and the blunt ends of their weapons, inflicting serious injuries. *Id.* (¶ 33); *id.* at PageID.237 (¶ 53). This alleged bludgeoning of Cadiente for several minutes as he lay helpless and semiconscious was violent, gratuitous, and objectively unreasonable. Such conduct constitutes the use of excessive force in violation of the Fourth Amendment. *See Barnard v. Las Vegas Metro. Police Dep't*, 310 F. App'x 990, 992 (9th Cir. 2009) (officers may not "use excessive force on an arrestee after he or she has surrendered, or is otherwise helpless, and is under complete control of the officers" (citing *LaLonde v. County of Riverside*, 204 F.3d 947, 961 (9th Cir. 2000))); *see also Plumhoff v. Rickard*, 572 U.S. 765, 777 (2014) (approving the firing of "a total of 15 shots" to "end a severe threat to public safety," but cautioning that it "would be a different case" if officers "had initiated a second round of shots after an initial round had clearly incapacitated [the fugitive] and had ended any threat of continued flight"). Indeed, the City does not dispute

that, under the allegations of the complaint, Cadiente has suffered a violation of his constitutional rights at the hands of Honolulu police officers.

Because Plaintiffs make the requisite threshold showing for a § 1983 action, the Court next considers Plaintiffs' specific theories of municipal liability.[2]

a.   Plaintiffs assert that the Honolulu Police Department has a custom of assaulting arrestees, but they have not sufficiently alleged the existence of an unlawful custom or practice.  To prevail on such a claim, a plaintiff must demonstrate that a custom is "so 'persistent and widespread' that it constitutes a 'permanent and well settled city policy.'" *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) (quoting *Monell*, 436 U.S. at 691).  Rather than be "predicated on isolated or sporadic incidents," the custom must be "founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Id.*  And that custom must be the "moving force behind [the] violation of constitutional rights." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011).

---

[2]    In addition to the excessive force claim, Plaintiffs allege that the officers arrested Mataele and Cadiente without probable cause, also in violation of their Fourth Amendment rights.  Because the Court concludes that Plaintiffs have sufficiently alleged the deprivation of Cadiente's constitutional rights on one ground, and because the City does not dispute that Plaintiffs have made such a showing, the Court need not consider whether the officers lacked probable cause.

The complaint does not allege frequent, consistent conduct that supports the existence of a municipal custom.  Indeed, as the City correctly observes, the complaint does not identify a single prior similar incident.  In response, Plaintiffs point to a paragraph in the complaint:  "[O]n January 1, 2024, [multiple unlawful actions] involved parallel and independent decisions of various personnel whose training had been entrusted to Defendant City and County, thereby also reflecting an unconstitutional pattern of practice."  ECF No. 20, at PageID.242 (¶ 72).  But the complaint does not allege what those parallel and independent decisions are, nor does it contend that those decisions constitute separate incidents.  All that is alleged is the conduct of the officers who interacted with Cadiente and Mataele on January 1, 2024.  Alone, those allegations are insufficient to establish that assaulting arrestees is the "standard operating procedure" of the Honolulu Police Department.  *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989) (internal quotation marks omitted).

It is true, as Plaintiffs recognize, that even a single incident involving multiple officers "provides some proof of the existence of the underlying policy or custom."  *Bordanaro v. McLeod*, 871 F.2d 1151, 1157 (1st Cir. 1989).  But "evidence of a single incident is insufficient, *in and of itself*, to establish a municipal 'custom.'"  *Mahan v. Plymouth Cnty. House of Corr.*, 64 F.3d 14, 16-17 (1st Cir. 1995) (citing *Bordanaro*, 871 F.2d at 1156-57); *see also City of Oklahoma*

11

*City v. Tuttle*, 471 U.S. 808, 823-24 (1985) (plurality opinion) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell* . . . ."). And that is true even where multiple officers are involved in the same event. *See Davis v. City of Ellensburg*, 869 F.2d 1230, 1234 (9th Cir. 1989) (holding that evidence of "unconstitutional actions of three low level police officers that resulted in [a plaintiff's] death" after a single arrest did not establish the existence of a policy or custom). The complaint therefore fails to state a claim of municipal liability on the basis of a custom or practice.

b. Nor have Plaintiffs sufficiently pled a failure-to-train claim. Such a claim is the most difficult form of § 1983 municipal liability to establish. *Connick v. Thompson*, 563 U.S. 51, 61 (2011). A municipality's failure to train its employees can only give rise to a § 1983 claim where there is an "identified deficiency in a city's training program," *City of Canton v. Harris*, 489 U.S. 378, 391 (1989), where the deficient training "amounts to deliberate indifference to the rights of persons with whom the police come into contact," *id.* at 388, and where the deficient training "actually caused" the constitutional deprivation, *id.* at 391. *See also Merritt v. County of Los Angeles*, 875 F.2d 765, 770 (9th Cir. 1989).

The complaint fails the first step of this analysis, for it does not identify a "particular omission" in the City's training program. *Connick*, 563 U.S. at 61. It contains no specific allegations about the training that officers do or do not receive.

12

Its only assertions—for example, that the City has "[f]ail[ed] to train and/or supervise officers in the constitutional requirements for use of force and the necessity of probable cause for arrest," ECF No. 20, at PageID.243 (¶ 75)—are vague and conclusory.  Indeed, the allegations appear merely to recite the relevant legal standard, for they largely mirror the language from *City of Canton*.  *Compare City of Canton*, 489 U.S. at 390 n.10 (hypothesizing about a city sending its officers to "arrest fleeing felons" without training them on "the constitutional limitations on the use of deadly force"); *with* ECF No. 20, at PageID.241 (¶ 68) (claiming that the City deployed officers "to capture fleeing felons" without training them on "the constitutional limits on the use of deadly weapons").  Such allegations, "without some further factual enhancement," *Twombly*, 550 U.S. at 557, do not adequately identify a specific deficiency in the City's training program.

Plaintiffs, then, are essentially arguing that this Court should infer that the training was defective because of the single incident on January 1, 2024.  *See* ECF No. 15, at PageID.155.  The Ninth Circuit has squarely rejected such a conclusion, however, holding that "an inadequate training policy itself cannot be inferred from a single incident." *Hyde v. City of Willcox*, 23 F.4th 863, 875 (9th Cir. 2022); *see id.* at 874-75 (noting that deliberate indifference, not defective training, can sometimes be inferred from a single incident).

13

Furthermore, the complaint does not sufficiently allege deliberate indifference. "Deliberate indifference is a stringent standard of fault." *Connick*, 563 U.S. at 61 (cleaned up). To satisfy this standard, a city decisionmaker must have "disregarded a known or obvious consequence of [their] action." *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 410 (1997). In other words, a policymaker must have "actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights." *Connick*, 563 U.S. at 61.

Typically, to establish that a policymaker was deliberately indifferent to the unconstitutional consequences of their inadequate training program, plaintiffs must show "[a] pattern of similar constitutional violations by untrained employees." *Id.* at 62. But, as discussed, the complaint in this case contains no allegations about any similar prior incidents.

In certain "rare" circumstances, a single unlawful incident can satisfy the deliberate indifference standard. *Id.* at 64. But in these rare cases, "the unconstitutional consequences of failing to train" must be "so patently obvious" that the city can be liable even without "a pre-existing pattern of violations." *Id.* Put differently, the incident must be the "highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations." *Bd. of Cnty. Comm'rs*, 520 U.S. at 409. And even then, the single

14

incident must still be "coupled with evidence that a city had neglected to train its armed officers." *Kirkpatrick v. County of Washoe*, 843 F.3d 784, 794 (9th Cir. 2016) (en banc).

Here too, Plaintiffs fall short. Taken as true, the allegations of the January 1, 2024, incident are deeply troubling. Plaintiffs, however, do not identify a "specific tool[]" that the officers should have been equipped with, nor do they describe the "recurring situations" in which the deficient training will cause problems. *Bd. of Cnty. Comm'rs*, 520 U.S. at 409. Plaintiffs merely assert that "[t]he consequences of failing to train, in the use of force, municipal law enforcement officers . . . are sufficiently obvious to warrant a presumption of deliberate indifference." ECF No. 20 at PageID.241 (¶ 69). Such a conclusory allegation falls short of showing deliberate indifference.

By contrast, consider cases in which plaintiffs showed a colorable claim of deliberate indifference even without a pattern of prior violations. In *Bordanaro v. McLeod*—a case on which Plaintiffs rely—a city's police chief and mayor had both received complaints from police officers about the inadequacy of their training. 871 F.2d at 1161. The chief and the mayor discussed the problem but chose to offer no new training. *Id.* Officers who sought out additional training, moreover, were actively discouraged from doing so. *Id.* Although the *Bordanaro* plaintiffs identified only a single incident of police brutality, the First Circuit held

15

that this evidence demonstrated deliberate indifference, as city decisionmakers "had express knowledge of the lack of any effective" training policy. *Id.*

Or take *Kirkpatrick v. County of Washoe*, 843 F.3d 784 (9th Cir. 2016) (en banc). There, a county did not dispute that it "had no policy or procedures for obtaining warrants before removing children from parental custody" and that it lacked "training [for] its social workers to recognize that a warrant may be required." *Id.* at 796. Although the plaintiff identified only a single specific incident of a social worker unconstitutionally removing a child, evidence demonstrated that "it was social workers' regular practice to remove children regardless of the risk of imminent bodily harm." *Id.* This, the Ninth Circuit said, "raise[d] more than a spectre of deliberate indifference by [the c]ounty." *Id.*

These cases illustrate the types of evidence and allegations that can support an inference of deliberate indifference. Plaintiffs' conclusory allegations here do not meet this standard.

Causation, the last element of a failure-to-train claim, is also unsatisfied. Because Plaintiffs have not alleged a specific shortcoming in the training, they cannot allege that that shortcoming was the actual cause of their harm. For these reasons, the complaint does not plead a failure-to-train claim.[3]

---

[3]    In their briefing on the failure-to-train claim, the parties dispute whether the Court can consider a photo of Tafokitau at the motion to dismiss stage. Because

c.   Plaintiffs' final theory under § 1983 is ratification.  The lack of an apology from the City, Plaintiffs suggest, "support[s an] inference[] of ratification."  ECF No. 20, at PageID.235-36 (¶ 46).

In some cases, "[a] municipality may be held liable for a constitutional violation if a final policymaker ratifies a subordinate's actions."  *Lytle v. Carl*, 382 F.3d 978, 987 (9th Cir. 2004).  Ratification requires "a deliberate choice to endorse" the officers' actions, *Gillette v. Delmore*, 979 F.2d 1342, 1348 (9th Cir. 1992), not just "acquiescence," *Dodge v. Evergreen Sch. Dist. #114*, 56 F.4th 767, 788 (9th Cir. 2022) (internal quotation marks omitted).  As the City points out, however, the complaint is missing the essential elements of a ratification claim: there are no non-conclusory allegations about who the final policymaker was, what authority they had, and what specific conduct they ratified.  *See Trevino*, 99 F.3d at 920.  And failing to apologize for conduct is not the same thing as affirmatively endorsing that conduct.  *Cf. Dodge*, 56 F.4th at 788 (recognizing that "a mere failure to discipline does not amount to ratification" (cleaned up)).

Plaintiffs' claim for municipal liability under § 1983 is therefore dismissed.[4]

---

consideration of the photo is not necessary to resolve the present motion, the Court need not resolve that dispute.  *See* ECF No. 22, at PageID.283 (City's Reply Br.) (noting that "consideration of the photograph is not necessary").

[4]    At the hearing, Plaintiffs acknowledged the difficulty of pleading a *Monell* claim.  They suggested that, with discovery, they could precisely identify the

### 2.    Respondeat Superior Liability Under State Law

Plaintiffs also advance a respondeat superior theory of liability, arguing that the City is subject to liability for the intentional torts of its employees under Hawaiʻi law.  As Plaintiffs recognize, a respondeat superior claim is a non-starter under federal law.  *Monell*, 436 U.S. at 663 n.7.  But if *state* law permits respondeat superior liability against municipalities, "the City may be liable for damages inflicted by its employees," even when those damages are sought in federal court.  *Wallis v. Spencer*, 202 F.3d 1126, 1144 n.16 (9th Cir. 2000); *Cameron v. Craig*, 713 F.3d 1012, 1023 (9th Cir. 2013).

In Hawaiʻi, cities are "subject to the state's tort laws in the same manner as any other private tortfeasor."  *Kahale v. City & County of Honolulu*, 104 Hawaiʻi 341, 349, 90 P.3d 233, 241 (2004); *see also id.* at 348, 90 P.3d at 240 (holding that the City "is not entitled to sovereign immunity").  And "an employer can be held liable under the theory of respondeat superior for torts maliciously committed by an employee acting within the scope of his authority."  *Lane v. Yamamoto*, 2 Haw.

---

City's unlawful custom, its training deficiencies, and evidence of ratification.  *See Rolen v. City of Cleveland*, 12 CV 1914, 2013 WL 12145960, at *4 (N.D. Ohio Aug. 7, 2013) (recognizing that "plaintiffs will find it difficult to make allegations rising to the level of plausibility without discovery, which possibly could turn away many meritorious claims").  But as Plaintiffs also acknowledged, it is ultimately their burden to allege facts in their complaint that "raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  For the reasons discussed, the complaint does not meet its burden for its *Monell* claims.

App. 176, 178, 628 P.2d 634, 636 (App. 1981); *see also Orso v. City & County of Honolulu*, 56 Haw. 241, 248, 534 P.2d 439, 494 (1975) (holding City liable for "tortious conduct of [its employee] under the doctrine of respondeat superior"), *overruled on other grounds by Kahale*, 104 Hawaiʻi 341, 90 P.3d 233.  But "if the employee has immunity from suit, it follows that the employer would also be immune."  *Hulsman v. Hemmeter Dev. Corp.*, 65 Haw. 58, 62, 647 P.2d 713, 717 (1982).

The City does not dispute that Plaintiffs have adequately alleged tortious conduct on behalf of the state police officers.[5]  Nor does the City dispute that the officers were acting within the scope of their authority when they arrested Cadiente.  Instead, the City claims that Plaintiffs have failed to "defeat the qualified or conditional privilege" afforded to nonjudicial government employees under Hawaiʻi law.  ECF No. 12-1, at PageID.128.

The Court disagrees.  Nonjudicial government officers—and, by extension, their municipal employers—benefit from a qualified privilege:  they may only be held liable in tort if they were "motivated by malice and not by an otherwise proper purpose."  *Medeiros v. Kondo*, 55 Haw. 499, 504, 522 P.2d 1269, 1272 (1974).

---

[5]      The City might be arguing that Plaintiffs failed to allege that the police officers were not entitled to use force.  ECF No. 12-1, at PageID.128.  But as discussed above, the complaint clearly alleges that the use of force *after* Cadiente was restrained was unreasonable and gratuitous.  The City does not meaningfully dispute that conclusion.

Malice, according to the Hawai'i Supreme Court, means "the intent, without justification or excuse, to commit a wrongful act"; the "reckless disregard of the law or of a person's legal rights"; and "ill will" and "wickedness of heart." *Awakuni v. Awana*, 115 Hawai'i 126, 141, 165 P.3d 1027, 1042 (2007) (cleaned up).

The Court has little difficulty concluding that, at the motion to dismiss stage, the complaint sufficiently alleges malice on behalf of the officers.  Plaintiffs claim that after the officers incapacitated Cadiente with a van, they proceeded to beat him repeatedly in the head as he lay semiconscious, causing "grave and potentially permanent physical and cognitive injuries."  ECF No. 20, at PageID.246-47 (¶ 90). Even if there was a basis to use the police van to incapacitate Cadiente initially— which the Court need not, and therefore does not, resolve at this stage—continuing to bludgeon Cadiente once he was semiconscious and nonresistant constituted a "reckless disregard of the law or of a person's legal rights."  *Awakuni*, 115 Hawai'i at 141, 165 P.3d at 1042.  Indeed, the complaint specifically alleges that at least one officer taunted the nonresistant and semiconscious Cadiente while bludgeoning him in the head, *id.* at PageID.232 (¶ 37), which further supports the conclusion that the bludgeoning was gratuitous and in reckless disregard of Cadiente's rights. With these allegations, at this early stage, Plaintiffs have adequately pled a state law claim against the officers that pierces their qualified privilege.

The City challenges this conclusion.  At the hearing, the City argued that the complaint does not specifically identify any one officer that bludgeoned Cadiente for the entire duration of the attack.  Even if the officers' actions, taken together, might seem malicious, the City contends that the Court cannot conclude that any *individual* officer acted with malice.  And without malice, the City's argument goes, the officers are entitled to a qualified privilege, and there can be no respondeat superior liability.

The complaint sufficiently alleges that several officers engaged in a particular course of conduct.  According to the complaint, "[m]ultiple officers pulled Mr. Cadiente out from under the police van . . . and continuously bludgeoned Mr. Cadiente . . . for several minutes."  ECF No. 20, at PageID.231 (¶ 33).  One witness reported that "ten to twelve officers participated in the bludgeoning."  *Id.*  It may well turn out that Plaintiffs cannot prove this allegation.  But even if "actual proof of those facts is improbable," the Court is obligated to accept well-pleaded allegations as true on a motion to dismiss.  *Twombly*, 550 U.S. at 556.  Furthermore, even if no one officer participated in the entirety of the attack, a single punch or blow thrown after Cadiente was nonresistant and semiconscious would be gratuitous.  *See LaLonde*, 204 F.3d at 961 (holding that, when "an arrestee surrenders and is rendered helpless," the "continued use of [a] weapon . . . constitutes excessive force").  Accordingly, even under the City's

21

skeptical reading, the complaint's allegations plead a "reckless disregard of the law" on behalf of the participating officers, sufficiently establishing malice. *Awakuni*, 115 Hawaiʻi at 141, 165 P.3d at 1042.

The City next relies on *Naki v. County of Maui*, No. 23-00383, 2024 WL 197433 (D. Haw. Jan. 18, 2024). *Naki*, however, is readily distinguished. There, because the complaint contained "[c]onclusory allegations," the court held that the plaintiffs had not "plausibly allege[d] sufficient facts to establish that any specific individual acted with malice." *Id.* at *11. By contrast, Cadiente and Mataele's complaint describes the officers' alleged assault on January 1, 2024: it details what the officers did, how they did it, when they did it, what they said, and where they were. Although the complaint does say that the officers acted "willfully, intentionally, with malice and oppression, and with a conscious disregard for the rights of Plaintiffs," ECF No. 20, at PageID.247 (¶ 92), that legal conclusion merely "provide[s] the framework of [th]e complaint," and it is sufficiently "supported by factual allegations" to state a claim. *Iqbal*, 556 U.S. at 679.

Finally, the City argues that respondeat superior is not a standalone claim. *See* ECF No. 12-1, at PageID.127. True, "a claim for respondeat superior cannot survive without an underlying tort claim against an employee." *McCormack v. City & County of Honolulu*, No. 10-00293, 2014 WL 692867, at *3 (D. Haw. Feb. 20, 2014). But there are such underlying claims here: Plaintiffs bring several tort

claims against Doe defendants, *see* ECF No. 20, at PageID.244-49 (¶¶ 82-101), and

the City does not challenge those underlying claims.[6]  In similar circumstances,

this Court has allowed state law respondeat superior claims to proceed against

counties.  *See, e.g.*, *Tokuhama v. City & County of Honolulu*, 751 F. Supp. 1385,

1393-94 (D. Haw. 1989) (granting summary judgment to City on § 1983 claims but

not on state respondeat superior claims); *Freeland v. County of Maui*, No. 11-

00617, 2013 WL 6528831, at *18, *25 (D. Haw. Dec. 11, 2013) (similar);

*Alexander v. City & County of Honolulu*, 545 F. Supp. 2d 1122, 1136 (D. Haw.

2008) ("The City and County can be held liable for a claim of false arrest, as well

as other intentional torts, on the basis of respondeat superior."); *McCormack v.*

*City & County of Honolulu*, 762 F. Supp. 2d 1246, 1253 (D. Haw. 2011) (similar).

The City has offered no convincing reason to depart from these cases.

　　　　One final point bears mention:  as the complaint correctly alleges, ECF No.

20, at PageID.223 (¶ 3), the Court has supplemental jurisdiction over this state law

claim.  The state respondeat superior claim and the remaining federal claims

against the officers "derive from a common nucleus of operative fact," *United*

*Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966), and therefore "form part

---

[6]　　The City asserts that "[a]ny state law claim that fails as against any specific
officer also fails against the City."  ECF No. 12-1, at PageID.128.  But aside from
contending that the officers are shielded by qualified privilege—which, as
discussed, they are not—the City offers no other arguments for dismissing the
claims against the officers.  *Id.*

of the same case or controversy," warranting the exercise of supplemental jurisdiction under 28 U.S.C. § 1367(a).

For these reasons, the Court dismisses the complaint's § 1983 claim for municipal liability but declines to dismiss the respondeat superior claim under state law.

## CONCLUSION

Defendant City and County of Honolulu's Motion to Dismiss is GRANTED IN PART and DENIED IN PART.  At Plaintiffs' request, they are granted leave to amend.  *See* Fed. R. Civ. Pro. 15(a)(2) ("The court should freely give leave when justice so requires.").  Any amended complaint should be filed no later than May 20, 2024.

IT IS SO ORDERED.

DATED: April 19, 2024, at Honolulu, Hawaiʻi.



Micah W.J. Smith
United States District Judge

---

Civil No. 23-00022 MWJS-WRP; *Tevitatonga Sinamoni Vaokehekehe Cadiente and Vaokehekehe Mouhungafa Mataele v. City and County of Honolulu,* et al.; ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT CITY AND COUNTY OF HONOLULU'S MOTION TO DISMISS